FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 1 2 2004

*Robert M. March*

CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

v.

No. CIV 03-663 JB/LFG
No. CR 02-969 MCA

LUIS MENDEZ-DURAN,

Defendant-Movant.

### MAGISTRATE JUDGE'S FINDINGS
### AND RECOMMENDED DISPOSITION[1]

#### Findings

1.      This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant

to 28 U.S.C. § 2255, filed June 16, 2003.[2] [Doc. No. 4.] Movant Luis Mendez-Duran ("Mendez")

attacks the judgment and sentence entered by the United States District Court for the District of New

Mexico in United States v. Mendez-Duran, No. CR 02-969 MCA.

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party
may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party
must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party
wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review
will be allowed.

[2]Mendez initiated this post-conviction proceeding on June 2, 2003 when he filed a brief in support of his
appeal from his criminal conviction. [Doc. No. 1.] The Court construed the appeal brief as falling under § 2255
and issued an order to show cause why the § 2255 motion should not be dismissed as procedurally barred. Mendez
then filed a second amended § 2255 motion [Doc. No. 7] on August 22, 2003, alleging three instances of
ineffective assistance of counsel. Thus, the Court quashed the order to show cause and directed the government to
respond. [Doc. No. 9.]

1

2.     As grounds for this motion, Mendez states that his trial counsel rendered ineffective assistance on grounds that: (1) his plea was not knowing and voluntary; (2) his plea was improperly procured by a promise of a sentence of 46 months; and (3) he was not given a copy of his Pre-Sentence Report ("PSR") [Doc. No. 7, p. 2.][3]

3.     The Court rejects Mendez contentions and recommends that his § 2255 motion be denied.

## Background

4.     On April 12, 2002, Mendez was found in Hidalgo County, New Mexico in a remote area near the Antelope Wells, United States/Mexico Port of Entry, where he and a group of other individuals had illegally entered the United States. Border Patrol learned through an Immigration and Criminal History check that Mendez had previously been deported from the United States on June 1, 1998. That deportation occurred subsequent to a June 11, 1997 conviction for possession of ephedrine–manufacturing Methamphetamine, an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43). [Doc. No. 1, Criminal Complaint in 02cr969.]

5.     On June 13, 2002, Mendez was charged by Information in violation of 8 U.S.C. § 1326(a)(1) and (2), and 8 U.S.C. § 1326(b)(2) – reentry of a deported alien. On the same day, Mendez agreed to and signed a Plea Agreement, pursuant to Criminal Rule 11(e). In the Agreement, Mendez acknowledged that the maximum incarceration period was 20 years. Under the Agreement,

---

[3]A good part of Mendez's brief in support of his § 2255 petition is filled with legal citations and discussion of case law. However, most of Mendez's discussion is irrelevant to his ineffective assistance of counsel claims and is, at times, incomprehensible. For example, he devotes a good deal of discussion to good-time credits and exhaustion of state remedies, and yet his § 2255 arguments are unrelated to these matters. Mendez's arguments sometimes are internally inconsistent as well. In his conclusory paragraph, Mendez-Duran states that the "allegations in his & 2255 Motion to Vacated, Set Aside or Correct Sentence are *without merit* and should in all things be Granted." [Doc. No. 7, last page] (emphasis added).

the parties stipulated that Mendez's sentencing guidelines offense level was 19, contingent upon Mendez accepting responsibility and agreeing not to collaterally attack or contest reinstatement of his prior deportation/removal order. Mendez agreed that the Agreement conferred a benefit upon him and that no downward departure was appropriate. By the terms of the Agreement, Mendez waived his rights to appeal the sentence imposed. Mendez agreed and represented that his plea of guilty was freely and voluntarily made and was not the result of any type of force or coercion. Mendez signed the Agreement on June 13, 2002. [Doc. No. 12, 02cr969.]

6.     On June 13, 2002, Mendez, with his attorney John Leyba, attended a plea hearing before United States Magistrate Judge Leslie C. Smith.[4] [Transcript of Plea Hearing, June 13, 2002, attached to the Government's response, Ex. 1.] Judge Smith thoroughly and carefully explained the plea proceeding to Mendez and ensured that Mendez understood his right to plead not guilty and to proceed to trial. In response to the Court's questions, Mendez testified that he was 35 years old and had attended the sixth grade. He was able to read and write in Spanish. He was not under the influence of any type of drugs, alcohol or medication. Mendez testified that he understood the nature of the charges brought against him as read by Judge Smith. Furthermore, he understood all of the elements of the crime with which he was charged. Mendez testified that he knew he was free to elect to proceed to trial, he had fully discussed these matters with his attorney and he was pleased with his attorney's performance. Before Mendez signed the Plea Agreement, it was read to him in Spanish, and his attorney thoroughly reviewed the terms of the Agreement with Mendez. Mendez signed the Agreement voluntarily and thoroughly understood every part of the plea agreement. No one

---

[4] Mendez agreed to proceed with the plea hearing before a United States Magistrate Judge, and also did not object to the Court taking his plea at the same time as another defendant.

3

pressured him, threatened him or talked him into pleading guilty. No promises were made to him in an attempt to force him to plead guilty. Mendez agreed that if he proceeded with his guilty plea, it was made on his own free will. The Court advised Mendez that if he did plead guilty there was an "excellent chance" that he would be deported from the United States and that if he re-entered again, the penalty could be "much, much worse."

7.     Before taking Mendez's guilty plea, the Court further advised Mendez that he and the government agreed, in accordance with Fed.R.Crim.P. 11(e)(1)(C),[5] that his guideline offense level was 19 but that a PSR would be ordered to determine his criminal history category. After Mendez had the opportunity to review the PSR, he was informed that he could object to it. Mendez was also advised that under this particular Plea Agreement, he would waive or give up all or part of his right to appeal.

8.   The Government outlined its proof as to Mendez, who then entered his plea of guilty. Mendez also admitted that he had been previously deported after a conviction of an aggravated felony.

9.     On August 26, 2002, Mendez filed Objections to the PSR. On September 4, 2002, Mendez proceeded to his sentencing before the Honorable M. Christina Armijo. Mendez was again represented by Attorney Leyba. The Court initially addressed Defendant's objections to the PSR. Mr. Leyba explained his position that the criminal history points attributed to Mendez should not be counted for charges where he did not have counsel and where there was no indication that Mendez waived counsel in those situations. [Sentencing Transcript, Sept. 4, 2002, Attached as Ex. 2 to

---

[5]Fed.R.Crim.P. 11(e)(1)(C) was renumbered in the 2002 amendments and is now found at Fed.R.Crim.P 11(c)(1)(C). The Rule provides in part that the plea agreement may specify that the government will agree that a specific sentence or sentencing range is the appropriate disposition of the case.

Government's response.] Mr. Leyba also objected because there was not substantial verification of Mendez's prior convictions.  However, Leyba proceeded to explain that after obtaining further verification of the previous convictions, he was withdrawing his objections.  Mendez had been represented by counsel and the matters, about which Leyba initially challenged, were substantiated. The Court clarified that there were no further objections to the PSR, and Leyba agreed that there were none.  The Court then adopted the factual findings and the guideline applications and formally accepted the guilty plea.

10.     Leyba explained on behalf of Mendez that he had returned to this country because both of his daughters had serious health problems and needed his help.  He asked the Court to impose the sentence at the lowest end of the guidelines.  The Court inquired whether the guideline range was 46-57 months, and Leyba confirmed this range.  The Court found that the offense level was 21 and the criminal history category was 4, establishing a guideline imprisonment range of 57 to 71. However, in accepting the plea agreement and stipulations, the Court agreed that the offense level would be 19.  With a criminal history category of 4, the imprisonment range was 46 to 57 months. Mendez was committed for a term of incarceration of 46 months.  Judgment was entered on September 13, 2002.  [Doc. No. 17 in 02cr969.]

11.     Mendez did not file a timely appeal.  He attempted to file an appeal of his criminal conviction but the Court of Appeals dismissed the appeal in May 2003 because it was untimely. [Doc. No. 19, in 02cr969.] Mendez's attorney, Leyba, passed away after Mendez was sentenced but before he filed his *pro se* § 2255 petition.

5

## Discussion

12.     *Pro se* pleadings are liberally construed.  Haines v. Kerner, 404 U.S. 519, 520, *reh'g*

*denied*, 405 U.S. 948 (1972).  In addition, as a general rule, ineffective assistance of counsel claims

should be brought in collateral proceedings such as this, rather than on direct appeal.  United States

v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

13.     The two-part test of Strickland v. Washington, 466 U.S. 668, 687 (1984), applies to

challenges to guilty pleas based on a claim of ineffective assistance of counsel.  Hill v. Lockhart, 474

U.S. 52, 58 (1985).  Under Strickland, Mendez must show that his attorney's performance was

deficient, i.e., fell below an objective standard of reasonableness, and that he was prejudiced by this

poor performance in that there is a reasonable probability that, but for the errors, he would not have

pled guilty and would instead have insisted on going to trial.  Strickland, 466 U.S. at 687-88; Hill,

474 U.S. at 59.  "A defendant making an ineffective claim on a counseled guilty plea must identify

particular acts and omissions of counsel tending to prove that counsel's advice was not within the

wide range of professional competence."  Moore v. United States, 950 F.2d 656, 660 (10th Cir.

1991).

14.     In applying the "objective standard of reasonableness" prong of the test, "[j]udicial

scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance,"

Strickland, 466 U.S. at 689; Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir.), *cert. denied*, 537

U.S. 1093 (2002); Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.), *cert. denied*, 525 U.S. 933

(1998).  In order to be found constitutionally ineffective, trial counsel's performance must have been

completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), cert. denied, 522 U.S. 844 (1997).

15.    Here, Mendez provides no specific support or allegations as to why his attorney purportedly was ineffective at the plea stage of the proceedings. Unsupported or vague allegations of impropriety and/or coercion fail to overcome the presumption of verity that attaches to specific representations made by a petitioner in pleading guilty. See Voytik v. United States, 778 F.2d 1306, 1309 (8th Cir. 1985). In this case, Mendez does not contend that Leyba somehow tricked him into accepting the plea or that he misinformed him regarding the possible outcome of the plea. Mendez states summarily, without more, that his attorney was ineffective because his plea was not knowing and voluntary. Mendez admits that before he signed his Plea Agreement, it was read to him in Spanish. In addition, before he signed the Plea Agreement, Mendez had reviewed it thoroughly with Leyba and Leyba had answered all of his questions concerning the Agreement. Mendez testified that he had no question whatsoever regarding the Agreement. He also testified at the plea hearing that he was pleased and satisfied with Leyba and no complaint about him. Finally, Mendez stated that his plea was voluntary, no one talked him into pleading guilty, no one pressured him to plead guilty and no one made any promises to coerce him into pleading guilty.

16.    Under these circumstances, there is no evidence in the record demonstrating that Leyba's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, or that Mendez's plea was not voluntary and knowing as a result of Leyba's performance. Indeed, had Mendez rejected the plea agreement, gone to trial and been found guilty, he would have faced a longer sentence. The Court informed him at the plea hearing that if he proceeded to trial and lost, he would be subject to a sentence of the full 20 years maximum period of incarceration. Thus,

even if the Court were to reach the second prong of the <u>Strickland</u> test, Mendez could not demonstrate prejudice, or establish a reasonable probability that, but for Leyba's supposed unprofessional errors, the result of the proceeding would have been different. <u>Id.</u>, at 694.

17.     Mendez's claim that Leyba improperly procured his plea by a promise of a sentence of 46 months meets the same fate for similar reasons. It is true that the government stipulated to a guideline offense level of 19, which depending on Mendez's criminal history category, would permit a lower guideline range than what Mendez would have faced had he proceeded to trial and lost. At Leyba's sentencing he was informed that the guideline range was 46 to 57 months, based on the guideline level of 19 and his criminal history category of 4, and he was ultimately sentenced to the lowest sentence of 46 months. At the sentencing hearing, the Court found that his offense level would have been 21, which would have resulted in a guideline imprisonment range of 57 to 71 months, had the government not made the Rule 11(e)(1)(C) stipulation.

18.     The Court finds no basis for finding that Leyba's performance "fell below an objective standard of reasonableness" or that Mendez was prejudiced by a stipulation that ultimately reduced his possible guideline imprisonment range. Mendez has not presented anything to this Court to demonstrate that his attorney materially misrepresented the consequences of his plea, *see* <u>Laycock v. State of New Mexico</u>, 880 F.2d 1184, 1186 (10th Cir. 1989), or that Leyba misinformed Mendez of the possible guideline imprisonment range.

19.     Finally, Mendez claims that Leyba was ineffective for not giving him a copy of the PSR. Since Leyba has since passed away, there is no way to determine whether Leyba did provide Mendez with the PSR before the sentencing. However, the fact that Leyba filed objections to the

PSR, along with the transcript of the sentencing hearing infer that Mendez had the opportunity to review the PSR.

20.     On July 31, 2002, the United States Probation Office prepared and disclosed the PSR 35 days before Mendez was sentenced on September 4, 2002. [Doc. No. 14, p. 10.] Clearly, Leyba obtained a copy of the PSR in time submit objections to specific portions of the PSR, which were filed August 26, 2002. Probation then filed an addendum to the PSR on September 3, 2002. At the sentence hearing, Judge Armijo immediately addressed the objections filed by Leyba, at which time Leyba withdraw the objections based on additional information he had received subsequent to filing the objections. [Doc. No. 14, Ex. 2.]

21.     Fed. R. Crim. P. 32(i) requires that the Court verify that the defendant and his attorney have read and discussed the PSR and any addendum to the report and further to provide them with a reasonable opportunity to comment on that information. The Court must also provide the defendant's attorney an opportunity to speak on the defendant's behalf before imposing the sentence and must address the defendant personally in order to permit him to speak or present any further information to mitigate the sentence. Here, the Court did not expressly ask Mendez if he had had an opportunity to review the PSR and addendum with his attorney.

22.     Notwithstanding the Court's omission, Mendez's attorney clearly had the PSR in his possession with ample time to file the objections. At the sentencing hearing, Leyba stated that he had reviewed the addendum, along with additional documentation regarding Mendez's prior criminal history, and informed the Court he had no alternative but to withdraw the objections based on the information he received after filing the objections. [Doc. No. 14, Ex. 2, p. 3.] In addition, Mendez was given an opportunity to address the Court and did so, with respect to his position that he was

9

being sentenced unjustly in view of the charge against him and his family's health problems. [Id., p. 6.]

      23.    In <u>United States v. Rangel-Arreola</u>, 991 F.2d 1519, 1524-25 (10th Cir. 1993), the Court addressed a similar challenge to the Court's failure to strictly comply with the directives of Rule 32(i). The Tenth Circuit considered whether the court was required to ask the defendant at sentencing whether he had an opportunity to read the PSR, whether he and his attorney had discussed the PSR, and whether the defendant wished to challenge any facts in the report. <u>Id.</u>, at 1525. The Tenth Circuit reasoned that while the Seventh Circuit concluded that the district court had to ask these specific questions, other circuits allowed the sentencing judge flexibility in determining whether the mandates of Rule 32 were satisfied. <u>Id.</u> The Tenth Circuit then adopted the majority view, holding that the sentencing court could "draw reasonable inferences from court documents, the defendant's statements, and counsel's statements" in deciding whether the defendant and his attorney had had the opportunity to read and review the PSR. <u>Id.</u> (internal citation omitted).

      24.    Here, the Court concludes that it was reasonable to infer from the objections filed by Leyba, and his statements to the Court regarding the bases for his initial objections and the decision for withdrawing his objections, that the defendant had had the opportunity to review and discuss the information in the PSR and the addendum with his attorney. However, even if the Court were to decide there could be no such inferences, it would not remand because Mendez had not established or even argued that he suffered prejudice as a result of Rule 32 violations. Mendez did not point to any factual inconsistencies with respect to the computation of his sentence. He provides no argument as to what challenges he might have made to the PSR or addendum and no specific allegations of inaccuracies in the PSR or addendum. *See* <u>Rangel</u>, 991 F.2d at 1526 n. 5 (Court would not remand

for re-sentencing without some showing of prejudice; to do otherwise would require district court
to undergo an exercise in futility in order to obtain the same sentence).

## **Recommended Disposition**

That Mendez's § 2255 motion [Doc. No. 4] be denied and that the case be dismissed, with
prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge

11